**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**January 12, 2018**

# In the Court of Appeals of Georgia

A17A1555, A17A1556, A17A1557. KEA v. THE STATE

McFADDEN, Presiding Judge.

In these related appeals, Joseph Bernard Kea, III appeals from his convictions for sexual battery (OCGA § 16-6-22.1), pandering (OCGA § 16-6-12), and use of a license plate to conceal the identity of a vehicle (OCGA § 40-2-5). He argues that the evidence was insufficient to support the convictions and that the trial court should have granted him a new trial under the general grounds set forth in OCGA §§ 5-5-20 and 5-5-21. Because the evidence authorized the convictions for sexual battery and pandering, we affirm the judgments in Cases No. A17A1555 and A17A1556. Because the evidence did not authorize the conviction for use of a license plate to conceal the identity of a vehicle, we reverse the judgment in Case No. A17A1557 to the extent

it pertains to that offense. (Kea was also convicted of theft by receiving in Case No. A17A1557. To the extent his enumerations of error in Case No. A17A1557 encompass the theft by receiving conviction, they are deemed abandoned under Ct. App. R. 25 (c) (2) because he cites no authority and presents no argument in support of any assertion that the trial court erred in connection with that conviction.)

1. *Sexual Battery (Case No. A17A1555).*

(a) *Sufficiency of the evidence.*

In reviewing a challenge to the sufficiency of the evidence to support a conviction, the "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (emphasis in original). In applying this standard, we do not resolve conflicts in the testimony, weigh the evidence, or draw inferences from the evidence, as those are functions of the jury. See id. "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [s]tate's case, the jury's verdict will be upheld." *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (citation and punctuation omitted).

Viewed in this light, the evidence showed that on August 15, 2015, Kea interviewed A. B. for a dispatcher position at the trucking company where Kea worked. Kea informed A. B. that she was not qualified for the position but told her that he was going to give her a "bonus." He asked her to stand up, approached her with money in his hand, walked behind her, then pulled her pants and underwear away from her body and moved his hand downward, trying to put the money in her pants. A. B. turned around to stop Kea and asked what he was doing. Later that day A. B. reported the incident to the police.

This evidence was sufficient to authorize the trial court to find that Kea committed the offense of sexual battery, which is committed when a person "intentionally makes physical contact with the intimate parts of the body of another person without the consent of that person." OCGA § 16-6-22.1 (b). Kea argues that there is no evidence that he made physical contact with A. B.'s intimate parts. But the term "intimate parts" includes the buttocks, OCGA § 16-6-22.1 (a), and A. B. testified that Kea placed his hand in the area of her buttocks and touched her. Kea also argues that there is no evidence that he intended to touch A. B.'s buttocks. But

> [t]he intent with which an act is done is peculiarly a question of fact for determination by the [factfinder]. Intent, which is a mental attitude, is

3

commonly detectible only inferentially, and the law accommodates this. The [trial court] could certainly infer from [Kea's] actions [of trying to put money down the back of A. B.'s pants] that he acted with the intent to [make physical contact with an intimate part of her body, her buttocks].

*Duvall v. State*, 273 Ga. App. 143 (1) (a) (614 SE2d 234) (2005) (citation and punctuation omitted).

(b) *Motion for new trial under OCGA §§ 5-5-20 and 5-5-21.*

Citing OCGA §§ 5-5-20 and 5-5-21, Kea argues that the trial court should have exercised her discretion to grant a new trial on the general grounds, that is because her finding of guilt was decidedly and strongly against the weight of the evidence. We disagree.

OCGA § 5-5-20 provides that "[i]n any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity, the judge presiding may grant a new trial before another jury." (Emphasis supplied.) OCGA § 5-5-21 provides that "[t]he presiding judge may exercise a sound discretion in granting or refusing new trials in cases where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding." (Emphasis supplied.) We note that while a bench trial does not involve

4

a jury and, technically, "there is no verdict in a bench trial," *Woodham v. State*, 253 Ga. App. 112, 113 (1) (558 SE2d 454) (2001) (citations omitted), a motion for new trial raising the general grounds is a proper means of seeking retrial or reexamination in the trial court of that same court's decision on an issue of fact. *Gully v. Glover*, 190 Ga. App. 238, 239 (1) (378 SE2d 411) (1989).

But our review of this claim is limited to the legal sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, supra. As our Supreme Court has explained:

> Trial courts have discretion to grant a new trial on the[ ] grounds [set forth in OCGA §§ 5-5-20 and 5-5-21] — commonly known as the "general grounds' — but appellate courts do not. [An appellate court's] review is limited to the legal sufficiency of the evidence. Indeed, even when asked to review a trial court's refusal to grant a new trial on the general grounds, [appellate courts] must review the case under the standard set forth in *Jackson v. Virginia*.

*Plez v. State*, 300 Ga. 505, 507 (1) n. 2 (796 SE2d 704) (2017) (citations and punctuation omitted). The record shows that the trial court exercised her discretion in denying Kea's motion for new trial, and, as discussed above, the evidence authorized the trial court's findings of fact under the standard set forth in *Jackson v. Virginia*. So "we find no abuse of discretion in [the trial court's] denying the motion

5

for new trial [based on OCGA § 5-5-20].” *Smith v. State*, 300 Ga. 532, 534 (1) (796 SE2d 671) (2017) (citation and footnote omitted).

2. *Pandering (Case No. A17A1556).*

(a) *Sufficiency of the evidence.*

Viewed in the light most favorable to the prosecution, *Jackson v. Virginia*, 443 U. S. at 319 (III) (B), the evidence showed that in the summer of 2015, Kea interviewed S. W. for a position at the trucking company. Although S. W. did not pass a typing test, Kea told her that he would give her the job if she had sexual intercourse with him. S. W., a single mother of two in need of a job, felt that she had “no other option,” so she agreed to Kea’s proposal and had sexual intercourse with him. Afterward, S. W. worked for the trucking company for several weeks, during which time Kea continued to approach her for sex; S. W. believed that if she did not agree she would be fired. On August 7, 2015, after Kea again made sexual advances toward her, S. W. told him no, left his office, and called the police. The trucking company then fired S. W.

This evidence was sufficient to authorize the trial court to find Kea guilty of pandering. Requiring sexual activities as a condition of employment constitutes pandering, a misdemeanor of a high and aggravated nature. OCGA §§ 16-6-12, 16-6-

6

13 (a) (4). Pandering is committed, among other ways, when a person "solicits a person to perform an act of prostitution in his or her own behalf[.]" OCGA § 16-6-12. An act of prostitution is "a sexual act, including but not limited to sexual intercourse or sodomy, [performed] for money or other items of value." OCGA § 16-6-9. Kea asserts in his brief that there was "no evidence that [S. W.] perform[ed] or was solicited to perform a sexual act for money." But the trial court could infer from the evidence that Kea solicited S. W. to engage in sexual acts with him and, in exchange, gave her a paying job and permitted her to keep that job. This was sufficient to support Kea's conviction for pandering. See *McGee v. State*, 165 Ga. App. 423, 423-424 (1) (299 SE2d 573) (1983); *Blanton v. State*, 150 Ga. App. 559, 559-560 (1) (258 SE2d 174) (1979).

(b) *Motion for new trial under OCGA §§ 5-5-20 and 5-5-21.*

Citing OCGA §§ 5-5-20 and 5-5-21, Kea argues that the trial court should have exercised her discretion to grant a new trial on the ground that her finding of guilt was decidedly and strongly against the weight of the evidence. We disagree for the reasons discussed in Division 1 (b), supra.

3. *Use of license plate to conceal identity of vehicle (Case No. A17A1557).*

(a) *Sufficiency of the evidence.*

7

Viewed in the light most favorable to the prosecution, *Jackson v. Virginia*, 443 U. S. at 319 (III) (B), the evidence showed that on December 19, 2015, a police officer responded to a call about a suspicious vehicle, which was parked with its lights turning on and off. The vehicle belonged to Kea, who was sitting inside it. The vehicle bore an expired license plate but a current revalidation decal. The license plate and the revalidation decal were not for the same vehicle. The revalidation decal found on Kea's vehicle had been stolen from another vehicle the prior month.

On the basis of that evidence, Kea was charged with an offense described in the accusation as "TAG - USE OF FOR CONCEALING IDENTITY OF VEHICLE." But the statute setting forth that offense, OCGA § 40-2-5 (a), covers license plates but not revalidation decals. So we agree that the evidence was insufficient to support Kea's conviction for that offense.

The state alleged that Kea "operat[ed] a motor vehicle bearing a license plate which was improperly removed or transferred from another vehicle, to wit: 2016 decal[.]" But OCGA § 40-2-5 (a) does not address acts related to decals, only acts related to license plates. The statute prohibits

> remov[ing] or transfer[ring] a license plate from the motor vehicle for which such license plate was issued; . . . sell[ing] or otherwise

8

transfer[ring] or dispos[ing] of a license plate upon or for use on any motor vehicle other than the vehicle for which such license plate was issued; . . . buy[ing], receiv[ing], us[ing], or possess[ing] for use on a motor vehicle any license plate not issued for use on such motor vehicle; or . . . operat[ing] a motor vehicle bearing a license plate which was improperly removed or transferred from another vehicle.

OCGA § 40-2-5 (a).

Although the state treats the terms "license plate" and "decal" as synonymous, it offers no authority for the proposition that we should read the term "license plate" in OCGA § 40-2-5 (a) to refer to a revalidation decal. Other sections within this chapter of the Code refer to license plates and revalidation decals as things distinct from each other. See, e.g., OCGA § 40-2-4 (4) (making it unlawful "to make, sell, or issue any license plate or revalidation decal"); OCGA § 40-2-8 (b) (1) (permitting law enforcement officer to store vehicle that "does not have attached to the rear thereof a numbered license plate and current revalidation decal"); OCGA § 40-2-8.1 (setting fine for person guilty of having "a valid numbered license plate without having the required revalidation decal affixed upon the plate"); OCGA § 40-2-30 (permitting a person to "purchase a vehicle license plate or revalidation decal by mail"); OCGA §

40-2-42 (providing rules for transfer of a "license plate or revalidation decal" from one vehicle to another).

There is no evidence that the license plate on Kea's vehicle was removed or transferred from another vehicle, or that Kea committed any other act addressed in OCGA § 40-2-5 (a). So there is no evidence authorizing Kea's conviction for use of a license plate to conceal the identity of a vehicle, and we reverse his conviction for that offense.

(b) *Motion for new trial under OCGA §§ 5-5-20 and 5-5-21.*

Given our reversal of Kea's conviction for use of a license plate to conceal the identity of a vehicle, we do not reach his enumeration of error regarding the trial court's denial of his motion for new trial under OCGA §§ 5-5-20 and 5-5-21.

*Judgments affirmed in Cases No. A17A1555 and A17A1556. Judgment reversed in part in Case No. A17A1557. Branch and Bethel, JJ., concur.*