**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**September 28, 2018**

# In the Court of Appeals of Georgia

A18A1346. BERNARD v. BERNARD.

A18A1347. BERNARD v. BERNARD.

DILLARD, Chief Judge.

In these consolidated appeals, James Bernard appeals from the trial court's orders finding him in contempt for failing to pay his ex-wife, Theresa Bernard, child support and alimony and incarcerating him until he purges the contempt. In Case No. A18A1347, James argues the trial court erred in denying his motion to set aside a prior contempt order and his request for a jury trial. In Case No. A18A1346, he contends the trial court erred in ordering him incarcerated because he lacked the ability to pay his child support and alimony arrearage. For the reasons set forth *infra*, we affirm in both cases.

The record shows that James and Theresa Bernard, who have three children together, were divorced in 2010. Under the final judgment and decree of divorce, James was ordered to pay Theresa alimony for 48 months, as well as child support for their then-minor children. But James failed to fulfill his child support and alimony obligations, and Theresa filed a contempt action. Then, on November 6, 2012, the trial court entered a final consent order on Theresa's petition for contempt. In this order, the parties stipulated that James owed Theresa $34,728.38 in child support and $34,728.38 in alimony, and the court required James to immediately pay $10,000 and make monthly payments toward the remaining arrearage.

But in 2014, Theresa initiated another contempt proceeding, alleging that James failed to pay both the arrearage and his ongoing child support and alimony obligations. The matter was then set for a hearing on February 9, 2015, but James failed to appear. After the hearing concluded, James's counsel appeared in the courtroom and advised that he intended to file an answer on James's behalf, but no responsive pleading was ever filed. Then, in a March 24, 2015 order, the court found that James failed to pay the arrearage from the 2012 consent order and had since accrued an additional child support and alimony arrearage. At the time this order was entered, James owed Theresa $54,528.38 in child support and $72,528.38 in alimony.

As a result, the court ordered the sheriff to arrest and incarcerate James until he paid $20,000 to purge the contempt. But James, who lives and works out of state, was not immediately arrested, and more than a year later (in October 2016), he filed a "Petition to Reconsider Order of Incarceration on Motion for Contempt." In this petition, James argued that the March 2015 order should be reconsidered under OCGA § 9-11-60[1] due to his counsel's failure to adequately represent him. Then, on March 1, 2017, following a hearing at which James appeared, the trial court denied James's motion for reconsideration, ordered him immediately incarcerated until he paid the purge amount, and directed him to comply with his ongoing arrearage payments. James immediately paid the purge amount of $20,000, and he was released.

It is against this backdrop that Theresa filed, in August 2017, her current motion for contempt, in which she again alleged that James failed to pay his child support and alimony arrearage, causing her economic hardship. James answered, and filed a consolidated demand for a jury trial and motion to set aside the March 2015

---

[1] Under OCGA § 9-11-60 (d): "A motion to set aside may be brought to set aside a judgment based upon: (1) Lack of jurisdiction over the person or the subject matter; (2) Fraud, accident, or mistake or the acts of the adverse party unmixed with the negligence or fault of the movant; or (3) A nonamendable defect which appears upon the face of the record or pleadings. Under this paragraph, it is not sufficient that the complaint or other pleading fails to state a claim upon which relief can be granted, but the pleadings must affirmatively show no claim in fact existed."

judgment under OCGA § 9-11-60 (d)[2] for fraud. Then, during the subsequent hearing, the trial court denied James's motion to set aside and his request for a jury trial and heard evidence regarding the arrearage and James's ability to pay.

Specifically, Theresa testified that James failed to make any payments to her since purging his prior contempt order and being released from incarceration in March 2017. James denied that he had the ability to pay the arrearage, but testified that he works as a district manager for an insurance company and has a monthly income of $7,353. The evidence also showed that James had just purchased a used car with a monthly note of $609 and a loan balance of $34,600. James and his current wife were also leasing a home with 2,300 to 2,400 square feet for $2,300 per month, and they had recently taken a vacation to Las Vegas. At the time of the hearing, James had $1,774.25 in one bank account and $9,378 in another account. Moreover, as a result of the prior contempt order, James liquidated his retirement account. And while she had not yet received the money, James's current wife left her job of eight years in anticipation of the current contempt proceedings, so that she could liquidate her retirement account worth $34,869 (with up to 30 percent going to penalties and taxes) to help James pay his child support and alimony obligations. She also liquidated a

---

[2] *See id.*

4

401 (k) account, receiving $9,371.95. And like James, she owed approximately $36,000 on her vehicle. Finally, she had approximately $20,000 in equity in a home she owned and $2,778.26 in a checking account. The evidence also showed that, since March 2017, James purchased a car for one of the children to use, purchased a new bed for another child, and sent cash payments of approximately $1,300 directly to the children. But James acknowledged that he had made no direct payments to Theresa since March 1, 2017.

At the conclusion of the hearing, in an order entered on November 28, 2017, the trial court found that James willfully failed or refused to pay his monthly child support and alimony arrearage in the amount of $107,056.76, and ordered him incarcerated in the local jail until he paid the full amount. The trial court also ordered James to pay attorney fees and expenses to Theresa's counsel within 90 days.

Thereafter, James filed a motion for supersedeas, and Theresa filed a motion for supersedeas bond. The trial court granted both motions, released James from custody, and, as a condition of supersedeas, ordered James to pay the bond within ten days. But James failed to pay the bond, and Theresa filed a motion for revocation of supersedeas. In the meantime, James filed an application for discretionary review of

5

the court's November 28, 2017 order.[3] And while his application was pending, on December 18, 2017, the court revoked James's supersedeas bond and ordered him incarcerated in the local jail until he either purged himself of contempt or posted bond.[4] James then filed a second application for discretionary review.[5] Both of James's applications were granted, and these appeals follow.

Case No. A18A1347

1. In his first claim of error, James asserts that the trial court erred in denying his motion to set aside the March 24, 2015 judgment. But James failed to raise this argument in his applications for discretionary appeal.[6] As a result, this issue is not properly before us for review.[7]

---

[3] *See* Case No. A18D0230.

[4] James also filed an emergency motion in this Court seeking to stay enforcement of the trial court's order of incarceration, but his motion was denied. *See* Case No. A18D0230 (December 13, 2017).

[5] *See* Case No. A18D0240.

[6] *See* Case Nos. A18D0230, A18D0240.

[7] *See Lutz v. Lutz*, 302 Ga. 500, 502 (1) (807 SE2d 336) (2017) (holding that when a party "did not raise this issue in his application for discretionary review . . . it is not properly before us for review"); *Zekser v. Zekser*, 293 Ga. 366, 369 (2) (744 SE2d 698) (2013) ("An application for discretionary review must enumerate the errors to be urged on appeal, and so, when we grant discretionary review, it necessarily is limited to the errors actually enumerated in the application." (citation

2. Next, James contends that the trial court erred in denying his request for a jury trial on the issue of whether he had the ability to pay his child support and alimony arrearage. We disagree.

A person who fails to pay support under a court order when he has the ability to do so "may be found guilty of civil or criminal contempt and incarcerated under either."[8] And the distinction between the two is that "criminal contempt imposes unconditional punishment for prior acts of contumacy, whereas civil contempt imposes conditional punishment as a means of coercing future compliance with a prior court order."[9] Accordingly, when a trial court "orders incarceration for an indefinite period until the performance of a specified act, the contempt is civil."[10] And

and punctuation omitted)); *Jackson v. Irvin*, 316 Ga. App. 560, 565 (2) (d) (730 SE2d 48) (2012) (holding that when a party did not raise a claim of error in her application, the Court could not consider it).

[8] *Hughes v. Ga. Dep't of Human Res.*, 269 Ga. 587, 587 (1) (502 SE2d 233) (1998); *accord Ford v. Ford*, 270 Ga. 314, 315 (509 SE2d 612) (1998); *Gallaher v. Breaux*, 286 Ga. App. 375, 377 (650 SE2d 313) (2007).

[9] *City of Cumming v. Realty Dev. Corp.*, 268 Ga. 461, 462 (2) (491 SE2d 60) (1997) (punctuation omitted); *accord Carey Canada, Inc. v. Hinely*, 257 Ga. 150, 151 (356 SE2d 202) (1987); *Moton v. State*, 332 Ga. App. 300, 301 (772 SE2d 393) (2015).

[10] *Hughes*, 269 Ga. at 587 (1); *accord In re Estate of Banks*, 339 Ga. App. 144, 147 (2) (793 SE2d 451) (2016).

here, because the trial court ordered James incarcerated only until he pays his past-due child support and alimony, he was found in civil contempt.[11]

With regard to civil contempt, it has been repeatedly held that "the respondent in contempt proceedings is not entitled to a trial by jury except where a jury trial is *expressly* provided by statute."[12] And in this case, James asserts that he is entitled to a jury trial on his ability to pay under OCGA § 15-1-4 (b), which provides that:

---

[11] *See Schmidt v. Schmidt*, 270 Ga. 461, 462 (3) (510 SE2d 810) (1999) ("It is well-settled that incarceration under civil contempt is designed to coerce behavior and must be conditioned on the defendant performing some act, such as paying past-due alimony or child support."); *Hughes*, 269 Ga. at 587 (1) ("Because the trial court ordered [the father's] incarceration until he paid $19,945.10, the contempt in this case was civil in nature.").

[12] *Branch v. Branch*, 219 Ga. 601, 601 (1) (135 SE2d 269) (1964) (emphasis supplied); *see Hortman v. Ga. Bd. of Dental Examiners*, 214 Ga. 560, 563 (1) (105 SE2d 732) (1958) (noting that the constitutional right to a jury trial "preserve[d] the right of trial by a jury as it existed at common law," and the "right to trial by a jury, unless extended by statute, applies only to actions proceeding according to the course of the common law, and not to special proceedings of a summary character," such as contempt proceedings). There is, of course, a right to a jury trial in criminal-contempt proceedings when the trial court imposes a punishment of six months or more. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826-27 (II) (A) (114 SCt 2552, 129 LE2d 642) (1994) (holding that a defendant has a constitutional right to a jury trial for "serious" criminal contempts involving imprisonment of more than six months); *In re Thompson*, 339 Ga. App. 106, 109 (1) (793 SE2d 462) (2016) ("For serious criminal contempt involving imprisonment of more than six months, the alleged contemnor additionally has the right to a jury trial."). But as James was found in civil contempt (which he concedes), he has no constitutional right to a jury trial.

8

No person shall be imprisoned for contempt for failing or refusing to pay over money under any order, decree, or judgment of any court of law or any other court of this state when he denies that the money ordered or decreed to be paid over is in his power, custody, or control until he has a trial by jury in accordance with the following provisions:

(1) The allegation of the plaintiff, receiver, referee, or any other person or persons that the defendant accused of contempt has a certain sum of money within his power, custody, or control, which he is withholding or refuses or fails to pay over, and the denial of the defendant that he has the power, custody, or control of the money shall form the issue to be tried by the jury, and the jury shall decide the issue of fact . . . .

But the Supreme Court of Georgia has long held that a person is not entitled to a jury trial on the issue of ability to pay or contempt for failure to pay alimony and child support.[13] And while none of our Supreme Court's opinions appear to address the

___

[13] *Brannon v. Brannon*, 225 Ga. 677, 677 (3) (171 SE2d 123) (1969) ("The respondent in the contempt proceeding for failure to pay an alimony judgment was not entitled to a jury trial[.]"); *Blackburn v. Blackburn*, 201 Ga. 793, 796 (3) (41 SE2d 519) (1947) ("In a proceeding before a judge of the superior court to enforce the payment by the father of an allowance made for the support of his children, he is not entitled to demand a jury to pass upon the question of his ability to comply with the terms of the decree."); *see Branch*, 219 Ga. at 601 (1) ("[Ga. Code. Ann.] § 24-105 does not require a jury trial in the situation here where the respondent is cited for refusing to pay an alimony judgment[.]"); *Stokes v. Stokes*, 126 Ga. 804, 804 (3) (55 SE 1023) (1906) ("The provisions of the Civil Code, § 4046, providing for a trial by jury in certain proceedings for contempt, has no application to a rule for contempt issued in the progress of an alimony case[.]"); *Lee v. Lee*, 97 Ga. 736, 737 (25 SE

9

plain meaning of OCGA § 15-1-4 (b) or its similarly worded predecessor statutes,[14]

this is ultimately of no consequence. We are bound by these decisions and must apply

---

174) (1896) (holding that Civil Code § 4711 (1892) had no application in a suit for the collection of alimony). Prior to the enactment of the Official Code of Georgia Annotated, the predecessor statutes to OCGA § 15-1-4 (b)—including Ga. Code Ann. § 24-105 (1) (1981), Civil Code § 4046 (1895), and Civil Code § 4711 (1892)—all used the same operative language as OCGA § 15-1-4 (b), set forth *supra*. For example, Civil Code § 4711 (1892) provided: "that in no case shall any person be imprisoned for contempt for failing or refusing to pay over money under any order, judgment or decree of any court of law or any court of this State, when he denies that the money ordered or decreed to be paid over is in his power, custody or control, until he [has] had a trial by jury as hereinafter provided . . ."

[14] *See supra* note 13. As far as we can tell, the closest our Supreme Court has come to explaining its interpretation of similar statutory language—contained in Civil Code § 4711 (1892)—was in *Lee v. Lee*, 97 Ga. at 737, where it noted that "[t]he act was passed to meet that class of cases where an insolvent debtor or other person is alleged to have in his custody, power or control, a certain sum of money which he has been directed by the court to turn over to a receiver, or to the plaintiff or some other person, and fails or refuses to surrender. The question which the act provides shall be submitted to the jury makes it clear that the act was intended to apply to that class of cases only."

10

them in this case.[15] Thus, because James was not entitled to a jury trial under binding Supreme Court precedent, the trial court did not err in denying his request.[16]

---

[15] *See* Ga. Const., art. VI, § VI, ¶ VI (1983) ("The decisions of the Supreme Court shall bind all other courts as precedents."); *State v. Smith,* 308 Ga. App. 345, 352 (1) (707 SE2d 560) (2011) ("[T]he doctrine of stare decisis prohibits this Court from ignoring the valid precedent of a higher court."); *see also State v. Jackson,* 287 Ga. 646, 658 (5) (697 SE2d 757) (2010) ("Stare decisis is an important principle that promotes the rule of law . . . ."); Kurt T. Lash, *Originalism, Popular Sovereignty, and Reverse Stare Decisis,* 93 Va. L. Rev. 1437, 1454 (2007) (noting that "[v]ertical stare decisis refers to the binding effect of precedent on lower courts[,]" and that "[s]erious rule of law costs would follow if lower courts were free to ignore precedent established by a higher court of appeal").

[16] We note that, in its order, the trial court found that James was not entitled to a jury trial under OCGA § 15-1-4 (c), which provides that "[w]hen a person who is gainfully employed violates an order of the court granting temporary or permanent alimony or child support and the judge finds the person in contempt of court, the sentencing judge may sentence the respondent to a term of confinement in a diversion center . . ." But subsection (c) does not address the right to a jury trial; rather, it authorizes a trial court to "sentence those gainfully-employed persons found in contempt of an order to pay court-ordered alimony or child support to a term of confinement in a diversion center and participation in a diversion program." *Hughes*, 269 Ga. at 588 (Hunstein, J., concurring); *see Gallaher v. Breaux*, 286 Ga. App. 375, 378 (650 SE2d 313) (2007) (noting that trial court had chosen not to apply OCGA § 15-1-4 (c) and confine the father in a diversion center or place him in work release, and, instead, the father was incarcerated and lost his job). In any event, James was not sentenced to confinement in a diversion center and participation in a diversion program, and, accordingly, OCGA § 15-1-4 (c) has no application in this case.

11

3. Finally, James argues that the trial court erred in ordering him incarcerated because he had no ability to pay the child support and alimony arrearage and purge himself of contempt. Again, we disagree.

To be sure, a trial court may not "continue incarceration for civil contempt when the respondent lacks the ability to purge himself."[17] But inability to pay is a defense only when "the contemnor demonstrates that he has exhausted all resources and assets available and is still unable to secure the funds necessary to enable compliance with the court's order."[18] Indeed, the contemnor must show clearly that "he has in good faith exhausted all the resources at his command and has made a diligent and bona fide effort to comply with the order of the court, and that he cannot borrow sufficient funds to comply with the obligation."[19] Importantly, the terms "wilful refusal" and "ability to pay" are "are not words of art which must appear in

---

[17] *Hughes*, 269 Ga. at 587 (1); *accord Estate of Banks*, 339 Ga. App. at 147 (2).

[18] *Darroch v. Willis*, 286 Ga. 566, 569 (2) (690 SE2d 410) (2010); *accord Cross v. Ivester*, 315 Ga. App. 760, 764 (1) (728 SE2d 299) (2012); *Affatato v. Considine*, 305 Ga. App. 755, 759 (2) (700 SE2d 717) (2010).

[19] *Darroch*, 286 Ga. at 569 (2) (citation and punctuation omitted); *accord Cross*, 315 Ga. App. at 764 (1); *Affatato*, 205 Ga. App. 759-60 (2).

every contempt order. It is only necessary that the order specify sufficient facts to show that the respondent was in contempt of court."[20] And if there is any evidence to support the trial court's finding of "a wilful refusal to comply with a court order, this court will affirm the order of contempt."[21] Finally, the contempt question, including any factual issues as to the ability to pay, is "for the trial court to determine, and that court's adjudication will not be reversed on appeal unless there has been an abuse of discretion."[22] With these guiding principles in mind, we will now consider James's claim of error.

Here, the trial court found that James willfully failed or refused to pay his child support and alimony arrearage. And there was evidence adduced at the hearing that James was living a comfortable lifestyle. He rented a house of approximately

---

[20] *Floyd v. Floyd*, 247 Ga. 551, 553 (1) (277 SE2d 658) (1981) (citation omitted); *accord Ruskin v. AAF-McQuay, Inc.*, 294 Ga. App. 842, 844 (670 SE2d 517) (2008).

[21] *Gallaher*, 286 Ga. App. at 377; *see Darroch*, 286 Ga. at 568 (2) ("[I]f there is any evidence to support a trial court's determination that a party has willfully disobeyed its order, the finding of contempt will be affirmed on appeal.").

[22] *Mahaffey*, 238 Ga. 64, 65 (2) (230 SE2d 872) (1976) (citation omitted); *see Amoakuh v. Issaka*, 299 Ga. 132, 133 (2) (786 SE2d 678) (2016) ("Trial courts have broad discretion to determine if a party is in contempt of its order, and the exercise of that discretion will not be reversed on appeal unless grossly abused." (punctuation omitted)).

13

2,400 square feet, recently vacationed in Las Vegas, and borrowed money to purchase a vehicle on which he owed $34,600. Moreover, he drew a salary of $7,353 per month and reported cash accounts worth $1,774.25 and $9,378. Additionally, his current wife reported $2,778.26 in a checking account, $20,000 in home equity, and retirement accounts worth $9,371.95 and $34,869 (minus penalties and taxes). Importantly, James presented no evidence that he attempted to borrow money, had reduced his spending, or made *any* attempts to pay his child support and alimony arrearage. And, had James made any payments since March 2017, "that might have indicated to the trial court his good faith in attempting to comply with" its orders.[23] But he admittedly made no payments since his prior incarceration, and thus failed to "show clearly that he has in good faith exhausted all the resources at his command and has made a diligent and bona fide effort to comply with the order of the court, and that he cannot borrow sufficient funds to comply with the obligation."[24] On this record, we cannot say that the trial court abused its discretion in concluding that

---

[23] *Cross*, 315 Ga. App. at 766 (1).

[24] *Darroch*, 286 Ga. at 569 (2) (citation and punctuation omitted).

14

James had the ability to pay and ordering him incarcerated until he paid the full amount owed as there is some evidence to support its findings.[25]

For all these reasons, the judgments of the trial court in Case Nos. A18A1346 and A18A1347 are affirmed.

*Judgments affirmed. Doyle, P. J., and Mercier, J., concur.*

---

[25] *See supra* notes 21-22 & accompanying text; *Amoakuh*, 299 Ga. at 133-34 (2) (affirming trial court's contempt order when father admitted that he failed to timely pay all child support and record amply supported the trial court's conclusion that father "had access to sufficient funds, could have paid the amount due weeks earlier than he did, and that his failure to pay child support was flagrant and willful" (punctuation omitted)); *Darroch*, 286 Ga. at 569 (2) (affirming trial court's finding of contempt when, *inter alia*, the ex-husband "initially tried to delay his obligations and then made only cursory efforts to refinance, failed to actively pursue applications, failed to provide requested information to potential lenders, and generally behaved in a dilatory fashion"); *Weiner v. Weiner*, 219 Ga. 44, 45 (131 SE2d 561) (1963) (affirming trial court's finding of contempt when ex-husband "was able to finance a honeymoon trip to Europe for himself and his new wife at a cost of $6,500 by selling a house, and the evidence indicates that his financial condition is such that he can pay the judgment of the court"). *But cf. Gallaher*, 286 Ga. App. at 376-378 (reversing contempt order when the evidence showed that the father "had no liquid assets, did not own an automobile, . . . had no other assets with which to pay the back child support[,]" and he could not obtain any more money from his family, which had already given him $55,000).

15