**FOURTH DIVISION
DOYLE, P. J.,
COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**February 21, 2020**

# In the Court of Appeals of Georgia

A19A1864. CHATHAM, et al. v. GARDNER EXCAVATING, INC., et al.

MARKLE, Judge.

Larry Scott Chatham ("Chatham") and his related companies appeal from the order of a trial court striking responsive pleadings as a sanction for contempt. For the reasons that follow, we find that the trial court was authorized to strike the pleadings based on its conclusion that Chatham and the corporate defendants wilfully failed to comply with a prior order. Therefore, we affirm the contempt order entered below.

In reviewing a finding of contempt like that at issue in this appeal, we will affirm the trial court's order if there is any evidence to support its determination that there was a wilful refusal to comply with a court order. *Bernard v. Bernard*, 347 Ga. App. 429, 435 (3) (819 SE2d 688) (2018).

This matter arises from the efforts of the parties to develop a residential subdivision in Paulding County, Georgia known as Collins Run. With money provided by his mother, Jo Anne Dixon ("Jo Anne Dixon"), Charles T. Dixon ("Troy Dixon") entered into an agreement with Chatham to purchase the real estate at a foreclosure sale.

Chatham purchased the property and subsequently set up a corporation to develop it, Alpine Building & Developing, LLC ("Alpine"). The parties agreed that Troy Dixon, through Gardner Excavating, Inc. ("Gardner"), would provide grading and site work. Investors Amon Peters and Deran Baxter also contributed money towards the venture. After acquiring the real estate, Chatham titled it in his own name.[1]

The parties' dispute arose out of the distribution of the proceeds from the first home sold in the subdivision. As a result, Jo Anne Dixon, Peters, Baxter and Gardner (collectively referred to as "Appellees") brought suit against Chatham, Alpine, and two other entities associated with the development and sale of the property, Chatham

---

[1] The parties dispute how the property was to be titled. As alleged in the complaint, Chatham was to title the property in JoAnne Dixon's name under the terms of their agreement.

& Company Realty, LLC and Chatham Realty Holdings, LLC (collectively referred to as "Appellants"). Shortly after filing the suit, Appellees filed a notice of lis pendens.

While the litigation was pending, and despite the existence of the lis pendens, Appellants conveyed the remaining lots in the Collins Run subdivision to a third party, receiving gross proceeds of $270,000 in return. Upon notice of the sale, Appellees moved to have the proceeds paid into the registry of the court. Following a hearing, the trial court granted the motion and ordered Appellants to pay into the registry the sum of $270,000 within five days.

When Appellants failed to comply with the order, the trial court conducted a compliance hearing and found Appellants to be in wilful, indirect contempt. It entered an order directing Appellants to pay $153,000 into the registry of the court within five days, and the remaining $117,000 within thirty days.

The following month, the trial court conducted a second hearing and found that, while Appellants had deposited the $153,000, they had failed to pay the remaining $117,000, and were in wilful, indirect contempt. The trial court again ordered Appellants to pay the remaining sums into the court's registry.

After Appellants again failed to comply, the trial court entered an order finding Appellants in wilful, indirect contempt, and striking their responsive pleadings as a sanction for their failure to comply. This appeal followed.

On appeal, Appellants contend the trial court abused its discretion in striking their pleadings. Appellants argue (1) the trial court erred when it refused to consider relevant evidence that allegedly would have shown an inability to comply with the trial court's order, and (2) the trial court's sanction was disproportionately harsh. We address each argument in turn, finding no merit to either claim.

1. Exclusion of evidence

At the first compliance hearing, Appellants attempted to introduce into evidence a threatening e-mail sent to Chatham by Appellees and a related quitclaim deed on which Chatham maintains his signature was forged, thereby improperly divesting him of his interest in another parcel of real estate. Indeed, this evidence apparently forms much of the basis for Appellants' answer and counterclaim. They argue that had they been permitted to tender this evidence, it would have been relevant to their "inability to pay" defense because Chatham would have been a more attractive candidate for a loan or other financing with which to comply with the court's order. The trial court, however, refused to consider this evidence because it

4

was impermissible hearsay and it pre-dated the order to pay funds into the court registry, and was therefore irrelevant on the issue of Appellants' compliance. Instead, the trial court reasoned that it was Chatham's current financial condition that was significant.

OCGA § 24-4-401 makes evidence admissible "if it has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Determinations made as to the relevance of evidence are within the sound discretion of the trial court. *Thorpe v. State*, 304 Ga. 266, 270 (4) (818 SE2d 547) (2018).

> A proper application of the abuse-of-discretion review recognizes the range of possible conclusions the trial judge may reach, and that there will often be occasions in which we will affirm the evidentiary ruling of a trial court even though we would have gone the other way had it been our call.

(Citation omitted.) *State v. Parks*, 350 Ga. App. 799, 807 (830 SE2d 284) (2019).

The issue before the trial court in the contempt proceeding was the Appellants' inability to comply with the court's order to pay funds into the registry. Notably, Appellants conceded they were in violation of its terms. See *Bernard,* 347 Ga. App. at 434 (3) ("inability to pay is a defense only when the contemnor demonstrates that

5

he has exhausted all resources and assets available and is still unable to secure the funds necessary to enable compliance with the court's order.") (citations and punctuation omitted). Thus, one possible option for the trial court in addressing the issue before it was to strictly limit the testimony to Appellants' then- current financial condition and not the facts and circumstances that might have led to their plight. We note that the trial court permitted extensive testimony about Chatham's assets and the fact that he no longer owned the property that was the subject of the allegedly forged quitclaim deed. It simply limited irrelevant testimony about the alleged fraud perpetrated upon Chatham by Appellees months before the suit was even filed. Thus, the trial court was clearly within its discretion in restricting Appellant's testimony.[2]

Moreover, even if the trial court erred in excluding the quitclaim deed and e-mail evidence relating to the alleged fraud, it was, at most, harmless. *HA&W Financial Advisors, LLC v. Johnson*, 336 Ga. App. 647, 654 (2) (782 SE2d 855) (2016). The trial court sat as the finder of fact in deciding whether its order had been violated, and it heard the proffered testimony about the circumstances surrounding

---

[2] To the extent Appellant argues that the evidence was relevant and should not have been excluded pursuant to OCGA § 24-4-403 ("Rule 403"), we note that the trial court was sitting as the finder of fact and was authorized to exclude the evidence under Rule 403 since the quitclaim deed and e-mail were already in the record before it.

the execution of the deed. In addition, these allegations were contained within Appellants' pleadings in the record. The evidence itself was also before the trial court in the form of Chatham's affidavit submitted in response to Appellees' motion for contempt. The quitclaim deed and e-mail were thus cumulative of other evidence properly before the court.

2. Striking of pleadings

Appellants next argue that the trial court abused its discretion in imposing a disproportionately harsh sanction against them when it struck their responsive pleadings. Again, we do not agree.

> Acts of contempt are neither civil nor criminal. They are either direct, meaning they are committed within the sensory perception of the judge, or they are indirect, meaning they occur outside the sensory perception of the judge. Once an act has been determined to constitute contempt of court, the action the court takes to deal with the contempt determines whether the contempt is deemed "criminal" contempt or "civil" contempt, a distinction historically made by both appellate courts in this state. The distinction between the two is that criminal contempt imposes *unconditional* punishment for *prior* acts of contumacy, whereas civil contempt imposes *conditional* punishment as a means of coercing *future* compliance with a prior court order.

(Citation and punctuation omitted.) *Murtaugh v. Emory University*, 321 Ga. App. 411, 415 (2) (741 SE2d 212) (2013).

Constitutional courts in this state have the inherent power and authority to punish contempt to ensure compliance with their orders. *In re Orenstein*, 265 Ga. App. 230, 232 (1), (593 SE2d 690) (2004). This may include the striking of responsive pleadings and the exclusion of supporting evidence. *Bayless v. Bayless*, 280 Ga. 153, 155 (1), (625 SE2d 741) (2006).

"Trial courts have broad discretion in ruling on a motion for contempt, and the trial court's ruling will be affirmed on appeal if there is any evidence in the record to support it." (Citation and punctuation omitted.) *Froehlich v. Froehlich*, 297 Ga. 551, 554 (3) (775 SE2d 534) (2015). In deciding whether a party is in contempt, the trial court must consider whether a party has wilfully refused to comply with its order. *Knott v. Knott*, 277 Ga. 380, 381 (1) (589 SE2d 99) (2003). "Ordinarily, one charged with contempt for failure to comply with a court order makes a complete defense by proving that he is unable to comply; however, the defendant's own acts cannot be responsible for his inability to comply." (Citation omitted.) *Turner Advertising Co. v. Garcia*, 252 Ga. 101, 102 (2) (311 SE2d 466) (1984).

In this case, the trial court conducted three separate hearings over a span of more than three months in an effort to ensure Appellants' compliance with its order. It heard evidence concerning the Appellants' inability to comply each time. The trial court further expressly found that the Appellants' inability to comply resulted from their own actions in transferring and wasting a substantial portion of the proceeds received after the litigation was filed, with knowledge of the litigation and the existence of the lis pendens. The fact that there might have been less onerous sanctions available to the trial judge does not change the fact that there is evidence to support the trial court's actions. See *Bernard*, 347 Ga. App. at 435 (3) (we will affirm if there is any evidence to support the finding of a wilful refusal to comply with the court's order). Thus, we reject this second argument as well.

For these reasons, we affirm the trial court's order striking Appellants' pleadings as a sanction for contempt.

*Judgment affirmed. Doyle, P. J., and Coomer, J., concur.*