**THIRD DIVISION
DOYLE, P. J.,
HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**March 12, 2025**

# In the Court of Appeals of Georgia

A24A1277, A25A0633. HEYMAN v. HEYMAN.

HODGES, Judge.

In Case No. A24A1277, Christina Marie Heyman ("Wife") appeals an order from the Superior Court of Rockdale County denying her motion for new trial following the court's entry of a "Consent Final Judgment and Decree of Divorce" and a "Parenting Plan Order." Wife contends that the trial court erred because it incorrectly: (1) concluded that she consented to the parties' divorce decree and parenting plan; (2) relied upon OCGA § 5-5-23 in evaluating her motion for new trial; and (3) concluded that the issues upon which Wife failed to consent were immaterial.

In Case No. A25A0633, Wife appeals from additional trial court orders: (i) holding her in contempt for failing to comply with certain requirements in the consent

divorce decree and parenting plan; and (ii) modifying the terms of custody in the parenting plan as part of a contempt proceeding and imposing an attorney fee award against her.

We consolidated these cases for decision on appeal. For the following reasons, we vacate the trial court's order denying Wife's motion for new trial in Case No. A24A1277 and remand that case with direction to afford the trial court the opportunity to apply the correct legal analysis and its discretion in the first instance. Based upon our conclusions in Case No. A24A1277, we likewise vacate the trial court's orders challenged in Case No. A25A0633 and remand that case as well.

We recited the background of this case in *Heyman v. Heyman*, 370 Ga. App. XXVI (Nov. 20, 2023) (unpublished) ("*Heyman I*"):

> [Wife] and John Russell Heyman [("Husband")] were married in 2014 and have one minor child together. [Wife] filed this divorce action in 2019, alleging that the marriage was irretreivably broken with no hope of reconciliation.

> On December 13, 2022, the parties' attorneys exchanged emails regarding an apparent settlement agreement. At a hearing the next day, the parties indicated that they had reached a settlement, but they did not

outline the terms of the agreement and indicated that [Husband's] attorney was drafting the final settlement documents.

On December 27, 2022, the trial court entered a "Consent Final Judgment and Decree of Divorce" and "Parenting Plan Order," which, inter alia, awarded the parties joint legal and physical custody of their child, established a parenting time schedule in the event the parties could not agree on one, and provided a method for resolving disagreements about major decisions involving the child. In the divorce decree, the trial court stated that prior to the hearing "the parties reached a complete agreement regarding all issues" and that the decree was based upon their agreement. The parenting plan similarly stated that the parties had agreed to the terms thereof.

On January 26, 2023, while represented by new counsel, [Wife] filed a "Motion for Reconsideration, and in the Alternative, Motion for New Trial."[1] [Wife] asserted in the motion that certain aspects of the

---

[1] In her motion, Wife cited "OCGA § 5-5-1 *et seq.*" and specifically listed the following grounds:

(1) The Judgment is contrary to law.

(2) The Judgment is contrary to the evidence.

(3) The Judgment is strongly against the weight of the evidence.

divorce decree and parenting plan did not match the parties' actual settlement agreement. [Wife] stated that when she received the proposed divorce decree and parenting plan, she shared her objections thereto with her previous attorney and expected her objections to be communicated to [Husband's] attorney and the trial court, but she was not aware what representations her previous attorney had made regarding her consent. [Wife] stated that the proposed divorce decree had lines for the parties to sign and the proposed parenting plan had lines for the attorneys to sign, but after she refused to sign the documents, they were altered to remove the signature lines and submitted to the trial court. [Husband] responded that the divorce decree and parenting plan matched the settlement agreement the parties had entered into by email.

Without holding a hearing, the trial court issued an order summarily denying [Wife's] motion.

(Footnotes omitted.)

---

(4) The Judgment was entered as a "consent judgment" when the Plaintiff did not actually consent to many of the terms contained in the Final Order.

Wife's motion therefore invoked "the 'general grounds,' see OCGA §§ 5-5-20 and 5-5-21, which, when read together, afford the trial court broad discretion to . . . weigh the evidence on a motion for new trial alleging the foregoing general grounds." (Citation, punctuation, and emphasis omitted.) *Allison v. State*, 356 Ga. App. 256, 264 (2) (d) (846 SE2d 222) (2020).

4

The following additional facts are relevant to our decision here. Of note, the "emails regarding an apparent settlement agreement" we cited in *Heyman I* began with a December 8, 2022 email from Saralyn Stewart, the child's guardian ad litem, to counsel for Wife and for Husband in which she listed twelve recommendations for settlement in preparation for sending a "final report."[2] One of the recommendations was that Husband and Wife "participate in a minimum of twelve co-parent counseling sessions over a twelve month period with Dr. Tiffany Whitworth." Husband's counsel responded with a December 13, 2022 email to the trial court and Wife's counsel that Husband "will agree to follow[] Saralyn's recommendations with the following modifications that were discussed during [a] recent telephone call[.]" The email then listed six proposed modifications, including the addition of a provision that co-parent counseling sessions would occur "with Dr. Whitworth (or an equally qualified professional if Dr. Whitworth is no longer available). . . ." In her email response later that day, Wife's counsel wrote, "[Wife] is in agreement with what we discussed. We do not need a hearing."

---

[2] The guardian ad litem's report was filed with the trial court on December 12, 2022.

During a December 14, 2022 hearing, the trial court stated, "[m]y understanding is that the parties have settled[,]" to which Wife's counsel replied, "Yes." After the trial court invited Wife's counsel to "put the settlement on the record[,]" Wife's counsel responded,

> [Husband's counsel] and I exchanged emails in writing. I don't think that there will be any dispute. . . . Everything is in writing and I have responded to that in writing so I don't know that that is necessary. And then [Husband's counsel] also put yesterday's discussion in writing.

Wife's counsel then added that "[t]he only question that [Wife] had . . . was the recommendation for Dr. Whitworth" and offered an alternate professional. Wife also indicated during her testimony in response to her counsel's questions:

> Q:    Have you settled all issues including property division, alimony, custody, visitation, child support, and any other issues involved in this divorce?
>
> A:    Yes.
>
> Q:    And we are going to prepare a settlement agreement for your signature to that effect?
>
> A:    Yes.

Husband's counsel later confirmed that she would be preparing the settlement documents. The record contains a proposed consent divorce decree and a proposed parenting plan order with signature blocks for the parties, each of which contain Wife's hand-written notes and provisions which were struck. The final copies of the documents, executed by the trial court, did not have signature blocks for either party.

Returning to our decision in *Heyman I*, we first concluded that Wife's motion was properly construed as a motion for new trial. As a result, we vacated the trial court's order denying Wife's motion for new trial and remanded the case for the trial court to conduct a hearing as required by Uniform Superior Court Rule 6.3.

On remittitur, the trial court conducted a hearing on Wife's motion. Thereafter, the trial court denied the motion, citing OCGA § 5-5-23 and *Carr-MacArthur v. Carr*, 296 Ga. 30, 34 (2) (764 SE2d 840) (2014) (identifying six criteria "[t]o obtain a new trial based on newly discovered evidence"), and found that Wife

> may have recognized what she perceived as discrepancies between what was negotiated between parties and what ultimately was finalized in the written Final Decree and Parenting Plan, but it did not rise to the level of being so material that it would probably produce a different result. Additionally, the Court notes that although [Wife] did file an Affidavit in support of the Motion for New Trial on January 2, 2024, because the

7

evidence did not rise to probably producing a different result, all six criteria for new trial are not satisfied.

We granted Wife's application for discretionary review of the trial court's January 29, 2024 order denying her motion for new trial, and we docketed her appeal of the trial court's order as Case No. A24A1277.

Less than two months after Wife filed that notice of appeal, Wife filed a motion for contempt and modification of the parenting plan, alleging, inter alia, that Husband removed the child from school to travel with him and his girlfriend for Husband's week-long training session out of state and that the child suffered an injury in Husband's care that Husband failed to report to Wife. As part of her motion, Wife asked that the trial court "modify the visitation provisions of the parenting plan to limit [Husband's] visitation time with the child to alternating weekends and alternating holidays" and make modifications to child support accordingly. Husband answered Wife's motion and counterclaimed for contempt due, in part, to Wife's failure to attend the co-parent counseling sessions ordered in the parenting plan. Husband asked the trial court to award him "final decision-making authority on all

major issues and that [Wife's] parenting time is decreased as that is in the best interests of the child."

Following a hearing, the trial court found both Husband and Wife in contempt and ordered each incarcerated on August 16, 2024. The trial court then entered an August 19, 2024 order in which it: (1) reaffirmed its findings of contempt by both parties; (2) continued both parties' joint and physical custody of the child; and (3) modified the parties' parenting plan by: (a) preventing Husband, rather than Wife, from signing up the child for extracurricular activities more than 20 miles from Husband's residence, and adding a provision that Wife must consent in writing to any extracurricular activities outside the 20-mile radius; (b) adding a provision that "[i]f [Wife] refuses to attend the scheduled co-parent counseling session[s], [Husband] shall immediately have final decision-making authority on said issue[s]"; (c) changing the start date for co-parent counseling sessions; and (d) adding a provision allowing Husband seven consecutive days of make-up parenting time. The trial court also awarded each party attorney fees. Together, the August 16 and 19, 2024 orders form the subject of Case No. A25A0633.

*Case No. A24A1277*

1. Considering Wife's second enumeration first,[3] Wife argues that the trial court erred when it evaluated her motion for new trial under OCGA § 5-5-23 instead of the "general grounds" she asserted in her motion. See OCGA §§ 5-5-20, 5-5-21. We agree.

At the outset, we note that "a motion for new trial raising the *general grounds* is a proper means of seeking . . . reexamination in the trial court of that same court's decision on an issue of fact." (Emphasis supplied.) *Kea v. State*, 344 Ga. App. 251, 253 (1) (b) (810 SE2d 152) (2018). The "general grounds" are codified at OCGA §§ 5-5-20 and 5-5-21:

> OCGA § 5-5-20 provides that "[i]n any case when the verdict . . . is found contrary to evidence and the principles of justice and equity, the judge presiding may grant a new trial. . . ." OCGA § 5-5-21 provides that "[t]he presiding judge may exercise a sound discretion in granting or refusing new trials in cases where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding."

---

[3] See, e.g., *Evans v. Jackson*, 368 Ga. App. 170, 172 (1), n. 2 (889 SE2d 343) (2023) ("For convenience of discussion, we have taken the enumerated errors out of the order in which appellant has listed them.") (citation and punctuation omitted).

*Kea*, 344 Ga. App. at 253 (1) (b); see also *In the Matter of Calhoun*, 317 Ga. 726, 732-733 (5) (a) (895 SE2d 258) (2023) (holding that "verdict" is not limited to "judgments of guilt rendered by a jury"). Read together, these statutes "afford the trial court *broad discretion* to . . . weigh the evidence on a motion for new trial[,]" and "the decision to grant a new trial on grounds that the verdict is strongly against the evidence is one that is *solely in the discretion of the trial court*." (Citations, punctuation and emphasis omitted; emphasis supplied.) *Allison v. State*, 356 Ga. App. 256, 264 (2) (d) (846 SE2d 222) (2020). The hallmark of a "general grounds" motion for new trial, then, is the trial court's exercise of its broad discretion, in which we recognize that "there is a range of possible conclusions the trial judge may reach and we will affirm a trial court's decision even though we would have gone the other way had it been our call[.]" (Citation and punctuation omitted.) *Bowers v. CSX Transp.*, 369 Ga. App. 875, 883-884 (b) (894 SE2d 690) (2023); see also *Page v. Will McKnight Constr.*, 282 Ga. App. 571, 573 (2) (639 SE2d 381) (2006) (holding that, on "general grounds" motion for new trial, trial court "is vested with the strongest of discretions" and that, as a result, "[t]he first grant of a new trial to either party is not be reversed by an

11

appellate court unless the verdict set aside by the trial court was absolutely demanded") (citation and punctuation omitted).

In contrast, OCGA § 5-5-23 provides:

A new trial may be granted in any case where any material evidence, not merely cumulative or impeaching in its character but relating to new and material facts, is discovered by the applicant after the rendition of a verdict against him and is brought to the notice of the court within the time allowed by law for entertaining a motion for a new trial.

To that end, we have held that

[i]t is incumbent on a party who asks for a new trial on the ground of newly discovered evidence to satisfy the court: (1) that the evidence has come to [her] knowledge since the trial; (2) that it was not owing to the want of due diligence that [she] did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness [her]self should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness.

(Citation and punctuation omitted.) *Leventhal v. Seiter*, 208 Ga. App. 158, 161 (2) (430 SE2d 378) (1993). Importantly, "[a]ll six requirements must be complied with to secure a new trial." (Citation and punctuation omitted.) Id. Therefore, the motion for

12

new trial procedure outlined in OCGA § 5-5-23 is more mechanical — and more stringent — than the "general grounds" motion for new trial standard.

By failing to evaluate Wife's argument based upon the "general grounds" in this case, the trial court imposed a more difficult standard than was appropriate. As a result, we vacate the trial court's order denying Wife's motion for new trial and remand this case to the trial court to allow it the opportunity to apply the "general grounds" analysis in the first instance. See, e.g., *Walker v. State*, 292 Ga. 262, 264-265 (2) (737 SE2d 311) (2013) ("Where, as here, the record reflects that the trial court applied an incorrect standard of review and, in so doing, failed to exercise its discretion and weigh the evidence in ruling on the merits of claims under OCGA §§ 5-5-20 and 5-5-21, the appellate court must vacate the judgment and remand the case to the trial court for consideration of the motion under the proper standard of review.") (citation and punctuation omitted); *Ward v. State*, 353 Ga. App. 1, 13 (3) (836 SE2d 148) (2019) ("When a trial court considers a claim under an improper legal standard, we must vacate the trial court's judgment and remand this case for the court to consider the claim under the proper standard.").

2. In view of our decision in Division 1, supra, we need not consider Wife's contention that the trial court abused its discretion in denying her motion for new trial because she did not consent to the parties' divorce decree and parenting plan. However, as part of the trial court's evaluation of Wife's "general grounds" motion for new trial, the trial court should consider any evidence presented concerning the parties' mutual assent to the terms of the consent divorce decree and the parenting plan order, including the evidence we have outlined above.[4]

3. Similarly, although for a different reason, we do not reach Wife's argument that the trial court erred in finding that the terms to which Wife did not agree in the consent judgment were immaterial. "An application for discretionary review must enumerate the errors to be urged on appeal, and so, when we grant discretionary review, it necessarily is limited to the errors actually enumerated in the application." (Citation and punctuation omitted.) *Bernard v. Bernard*, 347 Ga. App. 429, 431 (1), n. 7 (819 SE2d 688) (2018). "[W]hen a party did not raise this issue in [her] application for discretionary review[,] it is not properly before us for review." (Citation and punctuation omitted.) Id. Here, Wife's application for discretionary review did not

---

[4] We caution that our direction should not be read to suggest any specific resolution of Wife's motion for new trial.

raise an argument concerning the trial court's finding that Wife's objections to the consent divorce decree were immaterial. Accordingly, we do not consider this enumeration.

*Case No. A25A0633*

In view of our decision in Division 1, supra, in which we vacated the trial court's order denying Wife's motion for new trial and remanded the case to allow the trial court to apply the proper analysis, the trial court will have the opportunity to decide in the first instance whether the consent divorce decree should itself be vacated due to a lack of mutual assent by the parties.

If the trial court concludes that the consent divorce decree should be vacated, the contempt orders at issue in Case No. A25A0633 would be rendered invalid. See generally *Strickland v. Strickland*, 201 Ga. 293, 298 (2) (39 SE2d 483) (1946) (holding that "if the [domestic relations] order . . . is not valid, then the judgment of contempt necessarily is invalid and the plaintiff should not have been remanded to jail"). However, because issues related to the trial court's issuance of the contempt orders may recur on remand,[5] we address Wife's arguments here.

---

[5] As a result, we do not dismiss Case No. A25A0633 as premature. Compare *Grant v. Kooby*, 310 Ga. App. 483, 487 (713 SE2d 685) (2011).

4. Wife contends that the trial court erred in holding her in contempt for failing to attend the co-parent counseling sessions ordered by the consent divorce decree because the counseling constituted monetary relief that was subject to supersedeas and was, therefore, unenforceable while her appeal in Case No. A24A1277 remains pending. See OCGA § 5-6-34 (e).[6] While Wife's specific argument misses the mark, we agree that the trial court's consent divorce decree was subject to supersedeas and that the trial court was without authority to enforce the decree through contempt during the pendency of Wife's appeal following the denial of her motion for new trial.

Under Georgia law, "[t]he filing of a motion for a new trial . . . shall act as supersedeas unless otherwise ordered by the court[.]" OCGA § 9-11-62 (b); see also *Dunn v. Dunn*, 363 Ga. App. 132, 133 (1) (a) (871 SE2d 30) (2022). As a result, a party may not be held in contempt for violating the underlying order so long as a motion for new trial remains pending. See, e.g., id. at 133-134 (1) (a). Similarly, "[i]n civil cases,

---

[6] "Where an appeal is taken pursuant to this Code section for a judgment or order granting nonmonetary relief in a child custody case, such judgment or order shall stand until reversed or modified by the reviewing court unless the trial court states otherwise in its judgment or order." OCGA § 5-6-34 (e).

the notice of appeal . . . shall serve as supersedeas . . . ." OCGA § 5-6-46 (a).[7]

Accordingly, once a party has filed a notice of appeal in a civil case, "the trial court

_____

[7] Citing OCGA § 5-6-34 (e), Wife argues that the trial court's order to attend co-parent counseling constituted monetary relief, such that the requirement to attend counseling could not be enforced through contempt. See *Murphy v. Murphy*, 330 Ga. App. 169, 174 (5) (767 SE2d 789) (2014) ("Under OCGA § 5-6-34 (e), . . . when a party appeals an order granting *nonmonetary* relief in a child custody case, the order stands until reversed or modified by the reviewing court unless the trial court states otherwise in its judgment or order.") (emphasis supplied). Wife's argument rests upon a false premise.

Here, Wife's appeal in Case No. A24A1277 challenged the trial court's denial of her motion for new trial arising from the consent divorce decree. Therefore,

> [i]n this case, the underlying subject matter is the divorce action resulting in a final divorce decree. Although the divorce decree here determined, among other things, child custody, such determination does not transform this into a "child custody case" as that phrase is used in OCGA § 5-6-34 (a) (11) [or OCGA § 5-6-34 (e)].

*Todd v. Todd*, 287 Ga. 250, 251 (1) (703 SE2d 597) (2010). Rather, "other issues in a divorce action, including child custody, are merely ancillary to the primary issue of whether the marriage should be dissolved[.]" (Citation and punctuation omitted.) *Voyles v. Voyles*, 301 Ga. 44, 46 (799 SE2d 160) (2017). It follows that OCGA § 5-6-34 (e), which is only implicated in child custody cases, does not apply in this instance.

Therefore, Wife's argument fails, and we need not resolve the parties' dispute as to whether the co-parent counseling ordered by the consent divorce decree constitutes monetary or nonmonetary relief.

17

[is] deprived of the power to affect the judgment appealed, including the power to hold [the appealing party] in contempt for violating the order being appealed." (Citation and punctuation omitted.) *Massey v. Massey*, 294 Ga. 163, 166 (3) (751 SE2d 330) (2013). As a result, the trial court was without authority to hold Wife in contempt for violating the consent divorce decree, which had been appealed following the denial of her motion for new trial. We therefore vacate the trial court's August 16 and 19, 2024 orders.

5. Similarly, Wife also contends that the trial court erred in modifying the parties' parenting plan, as part of the parties' competing contempt actions, by transferring some portion of Wife's final decision-making authority to Husband.[8] For the following reasons, we agree that the trial court was not authorized to modify, to the extent it did so, Wife's final decision-making authority as part of the parties' contempt proceedings.

The parties' original parenting plan provided that Husband and Wife shared joint decision-making authority on all major decisions, including education, non-emergency health care, religious upbringing, and extracurricular activities. The

---

[8] Wife does not enumerate as error the other modifications made by the trial court in its order.

parenting plan further stated that "[i]f the parties are unable to reach an agreement after the parties have attended a co-parent counseling session . . . and both have made a good faith effort to reach a mutual decision, then and only then shall [Wife] have final decision-making authority." The trial court's contempt order modified this provision by substituting "Defendant (hereinafter 'FATHER')" for "Mother." The trial court added that, "[i]f [Wife] refuses to attend the scheduled co-parent counseling session, [Husband] shall immediately have final-decision making authority on said issue."

We note that a trial court may modify *visitation* rights during a contempt proceeding, see *Carlson v. Carlson*, 284 Ga. 143, 143-144 (663 SE2d 673) (2008), but it cannot modify *custody* rights in such a proceeding. See *Sullivan v. Harper*, 352 Ga. App. 427, 431 (1) (834 SE2d 921) (2019). We have held that the modification of decision-making authority is tantamount to a custody modification. See *Wilson v. Arnold*, 372 Ga. App. 583, 585 (1) (905 SE2d 678) (2024). It follows that, to the extent the trial court actually modified Wife's decision-making authority,[9] it was without

---

[9] Because the trial court's modification of Wife's final decision-making authority initially substituted Husband for Wife, but later stated that Husband would "immediately have final decision-making authority on *said issue*" after referencing the child's extracurricular activities, it is unclear whether the trial court intended to

19

authority to do so, and we are confident the trial court will remain cognizant of these principles on remand.

6. In view of our decision in Divisions 1, 4, and 5, supra, the trial court's award of attorney fees against Wife related to the contempt action is likewise vacated.

*Judgment vacated and case remanded with direction in Case No. A24A1277. Judgment vacated and case remanded in Case No. A25A0633. Doyle, P. J., and Watkins, J., concur.*

---

modify Wife's final decision-making authority globally or only as to the child's extracurricular activities. (Emphasis supplied.) Regardless, it was the modification itself that was impermissible.